UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ALICIA M. STEVENS,

              Plaintiff,                  CIVIL ACTION NO. 01-72911

        v.                          DISTRICT JUDGE JOHN FEIKENS

COMMISSIONER OF                  MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

              Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

      This Social Security case comes before the court on the parties' cross-motions for summary judgment.[1]  For the reasons stated below, the court recommends that plaintiff's motion be **GRANTED**, that the Commissioner's motion be **DENIED**, and that this matter be **REMANDED** for an award of benefits.

### II.  Background

      On March 3, 2000, plaintiff filed an application for Supplemental Security Income (SSI), alleging that she was disabled due to depression, shoulder pain, and pain related to a past automobile accident, with a disability onset date of October 30, 1999.  Tr. 57-60, 66.  Plaintiff

---

      [1]This matter was originally assigned to Magistrate Judge Wallace Capel.  It was transferred to this court on November 29, 2006.

was 42 years of age when she filed the application.  She has a high school education, with a work history including employment as a bartender/waitress, a food services worker, and the manager of a private social club.  Tr. 72, 74.

The Social Security Administration (SSA) denied plaintiff's claim on July 18, 2002.  Tr. 36-39.  Plaintiff then requested a hearing before an administrative law judge (ALJ).  Tr. 40.  The hearing was held on May 23, 2001, before ALJ Roger W. Thomas.  Tr. 177-225.  Plaintiff, represented by counsel, appeared and testified at the hearing.  The ALJ also took testimony from a medical expert and a vocational expert (VE).

On June 6, 2001, the ALJ issued a decision denying plaintiff's claim.  Tr. 162-71.  The ALJ determined that plaintiff had emphysema, myofascial syndrome, an affective disorder, an anxiety disorder, and that she was status post cervical fusion and bone spur removal procedures.  Further, the ALJ determined that plaintiff's impairments were "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii), but that she did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations.  The ALJ found that plaintiff could not perform any of her past relevant work, but that she had the residual functional capacity (RFC) to perform a range of light work and that there were a significant number of light jobs in the regional economy that plaintiff was capable of performing.  Accordingly, the ALJ concluded that plaintiff was not "disabled" within the meaning of the Social Security Act.  The ALJ's conclusion became the final determination of the Commissioner.

On August 2, 2001, plaintiff filed suit for review of the Commissioner's decision
pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  By stipulation, the case was remanded to the
Commissioner for further proceedings.  Tr. 173-74.  According to the Stipulation and Order to
Remand:

> The purpose of the remand is that the Appeals Council wishes to
> remand the case to an Administrative Law Judge (ALJ) for further
> development and evaluation.  Upon receipt of the court's order the
> ALJ will be directed to update the medical record to include
> reports of back surgery performed in May 2001, document the
> degree of recovery, obtain a consultative orthopedic examination
> with a physical capabilities assessment, as well as obtain
> vocational expert testimony.  The hypotheticals posed to the
> vocational expert will reflect both exertional and non-exertional
> impairments.

Tr. 173-74.  The Appeals Council remanded the matter to the ALJ for proceedings consistent
with the district court's remand order.  Tr. 175-76.

On January 16, 2003, a second hearing was held, this time before ALJ Gerard Rickert.
Tr. 416-61.  As before, plaintiff, represented by counsel, appeared and testified, as did a VE and
a medical expert.  On April 25, 2003, the ALJ issued a written decision denying plaintiff's claim.
Tr. 408-15.  The ALJ concluded that plaintiff had the following severe impairments:
degenerative joint disease of the cervical spine, emphysema, a hammer toe, depression, and
anxiety.  The ALJ also concluded that while plaintiff's impairments were severe, she did not
have an impairment, either alone or in combination, of listing-level severity.  Like ALJ Thomas,
ALJ Rickert determined that plaintiff had the RFC to perform a range of light work.  However,
unlike ALJ Thomas, ALJ Rickert concluded that plaintiff's impairments did not prevent her from
performing her past relevant work as a bartender/manager.  Accordingly, ALJ Rickert concluded
that plaintiff was not disabled.

On July 29, 2003, the Appeals Council again remanded the matter to the hearing level for further proceedings, finding (1) the ALJ failed to adequately evaluate plaintiff's mental impairment, (2) the ALJ's "conclusions regarding the claimant's physical residual functional capacity are not consistent with the evidence of record, and/or were not reached in accordance with 20 CFR 416.945 and Social Security Ruling 96-8p," and (3) plaintiff performed her bartender/manager job for only a short period of time and, therefore, the job did not constitute past relevant work. Tr. 467-69. The Appeals Council directed the ALJ to obtain updated medical records, hold a new hearing and obtain additional testimony from a VE, and take other such actions as deemed necessary to complete the administrative record.

On January 7, 2004, a third hearing was held before ALJ Melvin B. Kalt. Tr. 482-510. As with the prior two hearings, plaintiff appeared with counsel and testified, and the ALJ took additional testimony from a VE and a medical expert. On March 22, 2004, ALJ Kalt issued a written decision denying plaintiff's claim. Tr. 19-28. The ALJ concluded that plaintiff had the following severe impairments, none of which met the criteria of a listed impairment, either alone or in combination: (1) status post cervical fusion, (2) degenerative disc disease of the cervical spine, (3) chronic obstructive pulmonary disease, (4) back pain, (5) shoulder pain, and (6) an affective disorder. ALJ Kalt further determined that plaintiff had the RFC to perform light work and that she could not perform her past work, but that she was capable of performing other work that existed in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff was not disabled.

On April 21, 2004, plaintiff requested that the Appeals Council review the ALJ's decision. Tr. 10-16. The Appeals Council denied the request on January 4, 2006. Tr. 6-7. The

-4-

ALJ's decision thus became the final determination of the Commissioner for purposes of judicial review.

On June 1, 2006, the district judge entered a stipulated order reinstating plaintiff's case. As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff claims that the disability determination is not supported by substantial evidence and requests that a judgment be entered reversing the decision and granting her SSI benefits. The Commissioner contends that the decision is supported by substantial evidence and should thus be affirmed.

## III. Legal Standards

### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

-5-

A five-step process is used to evaluate both DIB and SSI claims.  20 C.F.R. § 416.920.

In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment."  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

## B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.  A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001).

## IV.  Analysis

Plaintiff raises no issues regarding the ALJ's findings at the first four steps of the disability determination process.  The court will thus focus its discussion on the ALJ's step five determination that plaintiff remains capable of performing other work that exists in significant numbers in the national economy.

The ALJ's step-five determination was based upon the testimony of the VE in response to a hypothetical based upon the ALJ's RFC determination, which is set forth below:

> The claimant has the residual functional capacity for light work with limitations of no overhead reaching, no repetitive pushing, pulling, or reaching, no climbing, no work with ladders, no extremes of temperature or humidity, only simple unskilled tasks, and no work involving interaction with the general public.

Tr. 27.  The hypothetical posed by the ALJ contained all of these limitations, with the exception of the limitation to "simple, unskilled tasks."  Tr. 507.  The VE testified that a person of plaintiff's age and vocational background, with the limitations described in the hypothetical, could perform housekeeping, food preparation, packaging, and inspection jobs, and that there were approximately 12,000 such jobs in the regional economy and 25,000 in the state.  Tr. 507.

At step five of the disability determination process, the Commissioner may carry her burden of demonstrating that the claimant can perform other work through the testimony of a

-7-

VE.  Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).  In order for the testimony of a VE to constitute substantial evidence, the hypothetical on which the testimony is based must fully and accurately incorporate all of the claimant's exertional and non-exertional limitations.  Id.  Thus, the question before the court is whether the hypothetical posed by the ALJ accurately depicted plaintiff's physical and mental impairments.

### A.  RFC – Physical Impairments

With respect to plaintiff's physical limitations, the ALJ concluded that she could perform light work with no overhead reaching, no repetitive pushing, pulling, or reaching, no climbing, no work with ladders, and no extremes of temperature or humidity.  The regulations define "light" work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting of carrying of objects weighing up to 10 pounds. Even though the weight lifted my be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

On April 13, 2000, Dr. Charles Blotner, a State of Michigan Disability Determination Services (DDS) consulting physician, examined plaintiff, concluding that she had "only minimal functional limitations" and that "she might be expected to be able to tolerate a modest/moderate degree of physical work."  Tr. 130.  Plaintiff exhibited no neurological deficits, and normal range of motion of the shoulders, elbows, hips, knees, ankles, wrists, hand, fingers, and lumbar

-8-

spine, with slightly reduced range of motion of the cervical spine.  Tr. 128-34.  Dr. Blotner noted that plaintiff could stand, bend, stoop, and perform other postural activities without difficulty, that she could perform activities requiring fine manipulation, that her reflexes were normal in the upper and lower extremities, that her gait was normal, that straight-leg raising was negative, and that her grip strength was normal.  Id.

In October of 2000, Dr. Lawrence G. Rapp examined plaintiff, who was complaining of neck pain with occasional numbness radiating down her right arm.  Tr. 149-51.  Dr. Rapp noted that x-rays and an MRI of plaintiff's cervical spine showed advanced degenerative changes at the C5-C6 level, narrowing of the right foramina at C5-6, and narrowing of the left foramina at the C3-4 level.  Tr. 150.  Sensation to pinprick in the C6 distribution on the right was mildly diminished, and plaintiff exhibited reduced range of motion.  Plaintiff's motor strength was normal and her reflexes were largely brisk and symmetric, with mild asymmetry shown in the left triceps.  Dr. Rapp noted that physical therapy had not relieved plaintiff's symptoms.  He recommended that she undergo cervical facet blocks.

On December 19, 2000, plaintiff underwent bilateral facet injections at the C3-4, C4-5, and C5-6 levels.  Tr. 264-66.  The injections apparently did not relieve plaintiff's symptoms. Thus, on May 15, 2001, plaintiff underwent a anterior cervical diskectomy, bilateral foraminotomy, and interbody fusion at C5-6 with allograft and an anterior cervical locking plate. Tr. 258-60.  On July 2, 2001, Dr. Rapp, who performed the surgery, examined plaintiff, noting that plaintiff's "preoperative symptoms are much improved but they're still present to some degree."  Tr. 280.  Plaintiff was still experiencing some numbness and muscular discomfort along the upper back musculature.  Id.  Dr. Rapp noted again on August 15, 2001 that plaintiff

was "much improved," though her symptoms were present to some degree.  Tr. 281.  Plaintiff

had good muscle tone, bulk, and strength, but was experiencing pain with range of motion of the

shoulders.  Id.  In November, plaintiff's condition was roughly the same as it was at her prior to

appointments with Dr. Rapp.  Tr. 282.  Plaintiff reported that she was 40 percent improved from

her pre-operative condition.  Id.

Another consultative examination was performed on June 20, 2002, this time by Dr. Peter

Samet.  Tr. 267-69.  Plaintiff had some tenderness in her cervical and thoracic paraspinal

muscles, but the examination otherwise yielded normal results.  Plaintiff demonstrated normal

motor strength, muscle tone, and sensation, her deep tendon reflexes were intact, there were no

signs of atrophy, she had full range of motion of the cervical and lumbar spine, straight leg

raising was negative, and she was able to get on and off the examination table, squat, and walk

normally on her feet, toes, and heels without difficulty.  Dr. Samet concluded the narrative

portion of his report with the following: "[a]t this point it appears that the patient has no

functional limitations related to her back what so ever."  Tr. 269.  Dr. Samet also filled out a

Medical Source Statement of Ability to do Work-Relative Activities (Physical) form.  Tr. 270-

73.  In that form, Dr. Samet indicated that plaintiff had no exertional limitations, that she could

frequently perform all postural activities, and that she had no manipulative,

visual/communicative, or environmental limitations.

Dr. Kenneth Richter examined plaintiff on several occasions following her surgery.  On

each occasion, plaintiff complained of continuing, severe neck pain, as well as numbness in her

extremities.  Tr. 312-24.  Physical examinations yielded normal results.  Dr. Richter noted on

October 2, 2002, that an EMG of plaintiff's right upper extremity demonstrated no abnormalities and that her neurological examination was normal.  Tr. 308.

Dr. Bharat Tolia examined plaintiff on August 21, 2003.  Tr. 362-63.  Plaintiff complained of neck pain, muscle spasms in her shoulders, low back pain radiating to her hips and feet, and numbness in her hands, arms, and toes.  Plaintiff showed normal strength, normal motor function, and normal muscle tone.  She was positive for arthritis and joint stiffness.  On September 17, Dr. Tolia examined plaintiff again.  Tr. 356.  She was neurologically intact, with normal motor function, reflexes, and sensation.  Plaintiff's gait was normal and she exhibited normal range of motion of the cervical and lumbosacral spine.  Similar findings were made at an October 2, 2003 examination.  Tr. 352.

Based on the foregoing, the court concludes that there is substantial evidence in the record to support the ALJ's conclusion that plaintiff could perform light work with restrictions.  Both consulting physicians who examined plaintiff concluded that she had no physical limitations.  Examinations conducted by her treating physicians have yielded largely normal results.  Plaintiff demonstrated normal muscle tone and strength, largely normal range of motion of the cervical and lumbar spine, a normal gait, no neurological deficits, normal reflexes, no difficulties performing postural and manipulative activities, and negative straight-leg raising.  There is no question that plaintiff has physical impairments that affect her ability to perform work-related activities and, as discussed further below, the record contains evidence from which a reasonable finder of fact might conclude that plaintiff is disabled.  However, the above-cited evidence provides a substantial basis for the physical component of the RFC determination and hypothetical.

**B.  RFC – Mental Impairments**

The ALJ determined that plaintiff had an affective disorder.  Tr. 27.  In order to accommodate this impairment, the ALJ restricted plaintiff to work involving only simple, unskilled tasks and work involving no interaction with the general public.  Id.

In a Psychiatric Review Technique dated June 19, 2000, a DDS consulting psychiatrist determined that plaintiff had slight restrictions in her activities of daily living and slight difficulties in maintaining social functioning, that she often experienced deficiencies of concentration, persistence, or pace, and that she had never experienced episodes of deterioration or decompensation in a work or work-like setting.  Tr. 119.  In a Mental RFC form, the consultant indicated that plaintiff had moderate limitations in the following areas: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) the ability to respond appropriately to changes in the work setting; (6) the ability to set realistic goals or make plans independently of others.  Tr. 120-21. The consultant determined that plaintiff was not significantly limited in the other functional areas listed in the form.  Id.  The consultant concluded that plaintiff was capable of performing simple, unskilled work.  Tr. 122.

On September 16, 2003, consulting psychologist Firoza B. Van Horn examined plaintiff, concluding that she had a mood disorder related to her pain and a major depressive-like disorder,

with a Global Assessment of Functioning Score (GAF) of 55.[2]  Tr. 325-339.  Dr. Van Horn filled

out a Medical Source Statement of Ability to do Work-Related Activities (Mental), in which she

indicated that plaintiff had only slight restrictions in her ability to understand, remember, and

carry out instructions.  Tr. 333.  Dr. Van Horn concluded that plaintiff was capable of

performing simple tasks and making simple decisions.  Tr. 333.  However, Dr. Van Horn,

determined that plaintiff had marked limitations in her ability to interact appropriately with

supervisors, her ability to respond appropriately to work pressures in a usual work setting, and

her ability to respond appropriately to changes in a routine work setting.  Tr. 334.  Dr. Van Horn

also concluded that plaintiff was moderately limited in her ability to interact appropriately with

the public and her ability to interact appropriately with co-workers.  Id.  Dr. Van Horn concluded

that plaintiff was incapable of working full-time due to her low frustration tolerance and the

likelihood that she would have problems interacting with supervisors.  Id.

Another consultant, Dr. Wladimir Zarski, examined plaintiff on two occasions, once on

April 1, 2000, and again on September 20, 2003.  Tr. 123-26, Tr. 335-39.  Following the April 1,

2000 examination, Dr. Zarski determined that plaintiff had a major depressive disorder of a

recurrent nature and a moderate history of alcohol abuse.  He assigned a GAF score of 57.  Dr.

Zarski did not rate plaintiff's functional limitations at that time.  Following the September 30,

2003, Dr. Zarski determined that plaintiff had an adjustment disorder with depressed mood.  Tr.

337.  He assigned a GAF score of 60.  Dr. Zarski also filled out a Medical Source Statement of

Ability to do Work-Related Activities (Mental) in which he determined that plaintiff had

---

[2]A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.).

-13-

moderate restrictions in the ability to understand, remember, and carry out detailed instructions, that she had slight restrictions in the ability to make judgments on simple work-related decisions, and that she had no restrictions in the ability to understand, remember, and carry out short, simple instructions. Tr. 338. With regard to her inability to interact with others, Dr. Zarski found that plaintiff had moderate limitations in the ability to respond appropriately to work pressures in a usual work setting and the ability to respond appropriately to changes in a routine work setting. Tr. 339. Dr. Zarski further determined that plaintiff had slight limitations in he ability to interact appropriately with the public and with supervisors. Id.

All three consultants essentially agreed that plaintiff was capable of performing simple, unskilled tasks. Thus, the ALJ was well-justified in including in his RFC assessment a limitation to the performance of work involving only simple, unskilled tasks. Their assessments differed regarding the extent to which plaintiff's mental impairment(s) affected her ability to interact with supervisors and her ability to respond appropriately to changes in the work setting. Dr. Van Horn determined that plaintiff was markedly limited in these areas. Dr. Zarski and the third consultant found plaintiff to be moderately to slightly limited in these areas. The ALJ found the latter assessments to be more persuasive. It is the function of the ALJ, not this court, to resolve conflicts in the evidence, and the ALJ reasonably did so in this matter. Smith, supra, 307 F.3d at 379. Accordingly, the court concludes that there is substantial evidence in the record to support the mental component of the ALJ's RFC assessment.

### C. Substantial Evidence Review

As noted above, the Commissioner may carry her step five burden through the testimony of a VE, but only if that testimony is given in response to a hypothetical that fully and accurately

-14-

describes a claimant's exertional and non-exertional limitations.  Varley, supra, 820 F.2d at 779.
Id.  Here, the ALJ reasonably resolved the conflicts in the record, and there is substantial
evidence in the record to support his RFC assessment.  However, the ALJ committed a simple
error which necessitates that his disability determination be vacated.  While the ALJ limited
plaintiff in the RFC assessment to work involving only simple, unskilled tasks, he inexplicably
failed to convey this limitation to the VE in the hypothetical posed at the administrative hearing.
In response to the hypothetical, the VE testified that plaintiff could perform housekeeping, food
preparation, packaging, and inspection work  Tr. 507.  These jobs may well involve only
"simple, unskilled tasks."  However, there is no evidence in the record regarding the
requirements of these jobs.  Thus, the court has no way to tell whether, in fact, those jobs fall
within plaintiff's RFC, as determined by the ALJ.  Accordingly, the court concludes that the
hypothetical did not accurately describe all of plaintiff's limitations and, therefore, that the VE's
testimony does not constitute substantial evidence in support of the ALJ's disability
determination.[3]

Having concluded that the ALJ's disability determination is not supported by substantial
evidence, the next issue the court must address is whether this matter should be remanded to the
Commissioner for further proceedings or for an award of benefits.  Generally,  "[i]f a court
determines that substantial evidence does not support the Secretary's decision, the court can
reverse the decision and immediately award benefits only if all essential factual issues have been
resolved and the record adequately establishes a plaintiff's entitlement to benefits."  Faucher v.

---

[3]The Commissioner has essentially conceded the point, having failed to address this
rather error in her brief.

Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994). Here, the question remains whether the addition of a "simple, unskilled work" limitation to the hypothetical posed to the VE would so erode the occupational base as to compel the conclusion that plaintiff is disabled. Thus, under the general rule set forth in Faucher, it would appear, at first glance, that remand for further proceedings would be appropriate. However, this is not an ordinary case, and, for the reasons discussed below, the court concludes that it would be inappropriate to remand this matter for additional proceedings.

The Second Circuit has held that where reversal is based upon the Commissioner's failure to carry her burden of proof at step five of the disability determination process, remand solely for an award of benefits is warranted. Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998). Further, the Second Circuit has noted that a remand under such circumstances is particularly appropriate where there has been undue delay in the resolution of the claimant's application for benefits:

> Because the Commissioner failed to introduce evidence sufficient to sustain his burden on the fifth step in the case sub judice, remand for the sole purpose of calculating benefits is mandated.... Moreover, we believe this disposition to be particularly appropriate given that Curry's application has been pending for more than six years and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial additional delay.

Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). These principles are readily applicable in this matter.

The Commissioner has badly mishandled this claim, which has now been pending for nearly seven years. Remand for additional proceedings – including a *fourth* administrative hearing – would result in further undue delay. It is notable that this matter was originally

-16-

remanded by the district judge in 2001 and did not return to the court until 2006.  There is no telling when the case might finally be resolved if further administrative proceedings and, possibly, further judicial review, are conducted.  In addition, the Commissioner, as indicated in footnote three, *infra*, has essentially conceded that the ALJ erred in this matter, having neglected to address in her motion for summary judgment the ALJ's failure to incorporate all of his RFC findings into the hypothetical he posed to the VE.  The Commissioner's failure to carry her step five burden and repeated failure to properly adjudicate plaintiff's claim might alone warrant a remand for an award of benefits.

Moreover, while there may be substantial evidence in the record to support the ALJ's assessment of plaintiff's physical and mental limitations, there is undoubtedly evidence in the record from which a reasonable finder of fact could conclude that plaintiff's physical and mental impairments render her disabled.  Plaintiff has consistently complained of unrelenting neck and back pain for many years and has undergone various forms of treatment, including bilateral facet injections and surgery, with little apparent relief in her symptoms.  A pre-surgery MRI showed a central disc bulge at the C3-4 level, left neural foraminal narrowing due to an adjacent spur, and an osteocartilaginous spur at C5-6.  Tr. 155-56.  Plaintiff obtained some relief from her surgery, but her symptoms eventually returned.  On August 15, 2001, Dr. Rapp noted that plaintiff had ongoing muscle spasms in her upper back and that she was experiencing diffuse pain in her upper back.  Tr. 281.  By January 2, 2002, plaintiff was again complaining of intense pain – a rating of nine of a ten-point scale.  Tr. 320.  Plaintiff was taking Zydone and Neurontin for pain.[4]

_____

[4]According to the Physicians Desk Reference (PDR), p. 1118 (Thompson PDR, 6th Ed., 2006), Zydone "is indicated for the relief of moderate to moderately severe pain."  The PDR contains no such information regarding Neurontin, but indicates that it is an analgesic pain reliever.  Id. at 2498-99.

-17-

Dr. Richter decided to put plaintiff on low-dose Methdone for additional pain relief.  Id.  On

February 7, 2002, in addition to pain, plaintiff complained of numbness and tingling in her hands

bilaterally.  Tr. 318.  Dr. Richer diagnosed her with chronic pain syndrome status post surgery

with myofascial pain.  Tr. 318. On May 2, 2002, plaintiff rated her pain as an eight or nine on a

ten-point scale.  Tr. 312.  Dr. Richter noted that she had a "sad-tired looking affect."  Id.  He

discontinued the Methadone and put plaintiff on Kadian 20 mg. bid.[5]  Id.  On October 2, 2002,

plaintiff reported that she was experiencing severe neck pain, as well as hand pain and numbness

of her fingers.  Tr. 308.  She rated her pain as a ten on a ten-point scale.  Id.  Dr. Richter started

her on Duragesic because she was unable to tolerate Kadian or Methadone.[6]  Id.  Another

treating physician, Dr. Jayawardena, determined that plaintiff's physical impairments rendered

her totally disabled.  Tr. 283, 407.  Consistent with her complaints to her physicians and her

treatment history, plaintiff testified that her daily activities were extremely limited due to a

---

[5]The PDR, at p. 573, states that "KADIAN® is indicated for the management of moderate to severe pain where treatment with an opiod analgesic is indicated for more than a few days.  KADIAN® was developed for use in patients with chronic pain who require repeated dosing with a potent opiod analgesic[.]"

[6]The PDR, at p. 2448, states the following regarding Duragesic:
> DURAGESIC® contains a high concentration of a potent Schedule II opiod agonist, fentanyl.  Schedule II opiod substances, which include fentanyl, hydromorphone, methadone, morphine, oxycodone, and oxymorphone have the highest potential for abuse and associated risk of fatal overdose due to respiratory depression.  Fentanyl can be abused and is subject to criminal diversion....
>
> DURAGESIC® is indicated for management of persistent, moderate to severe chronic pain that:
> •requires continuous, around-the-clock opiod administration for an extended period of time, and
> •cannot be managed by other means such as non-steroidal analgesics, opiod combination products, or immediate-release opiods.

-18-

combination of pain and depression and that she spent a good deal of the day laying down in an attempt to relieve her pain.  Tr. 484-501.  While the ALJ did not fully accept plaintiff's testimony, there is ample evidence in the record to support her complaints of disabling symptoms.

In addition, Dr. Van Horn, who thoroughly examined plaintiff and administered various psychological tests, determined that plaintiff's mental impairments would alone render her unable to work.[7]  Tr. 334.  In the narrative portion of her report, Dr. Van Horn noted that plaintiff "appear[ed] depressed with a tired-looking affect.  She sobs softly on and off."  Tr. 328.  Plaintiff reported that she felt uncomfortable and anxious around people.  Id.  Dr. Horn determined that plaintiff had "a long history of depression" and that plaintiff "has a lot of strengths but she is currently so depressed that she [is] unable to see her world in a positive way.  Her prognosis is generally guarded because her problems tend to be chronic and characterologic."  Tr. 332.  Dr. Zarski noted that plaintiff had a "sad expression" and that her "mood was depressed."  Tr. 336.  Plaintiff reported that she often became anxious, resulting in shortness of breath and heart palpitations.  Tr. 335.  In addition, plaintiff has taken various medications for her mental impairment(s), including Prozac, Xanax, and Klonopin.

In sum, while the court cannot say that the evidence is so overwhelming as lead to only one rational conclusion, there is ample evidence in the record to support the conclusion that plaintiff is unable to engage in substantial gainful activity due to a combination of her physical and mental impairments.  The record contains evidence that plaintiff has a cervical spine

---

[7]Dr. Van Horn administered the following tests: (1) Wechsler Adult Intelligence Scale-III, (2) Wide Range Achievement Test -3, (3) Bender Gestalt Visual Motor Test, (4) Draw a Person Test, and (5) Minnesota Multiphasic Personality Inventory-2.  Tr. 326.

condition that causes her intense pain and has been resistant to all forms of treatment and that she suffers from a severe mental impairment that impacts upon her ability to concentrate, stay on task, interact with others, and respond appropriately to changes in the work setting.  Clearly, plaintiff is significantly impaired.

In light of the Commissioner's failure to carry her burden of proof at step five, the Commissioner's repeated errors in the adjudication of plaintiff's claim, and the strength of the evidence demonstrating that plaintiff is, in fact, physically and mentally unable to work, the court concludes that a remand for further proceedings would be inappropriate.  Though there may be conflicts in the evidence, this court is unwilling to give the Commissioner yet another opportunity to attempt to get it right.  See, e.g., Carreau v. Halter, 2001 WL 586705 (D.N.H)("I see no reason why the Commissioner should be allowed a third opportunity to satisfy his burden of showing, by substantial evidence, that Carreau is capable of performing specific jobs in the national economy.").  In the court's view, the proper and just resolution of this matter is a remand for an award of benefits.

## V.  Conclusion

For the reasons stated above, the court recommends that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for calculation and an award of benefits.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan_____
VIRGINIA M. MORGAN
Dated: February 8, 2007___        UNITED STATES MAGISTRATE JUDGE

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on February 8, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

-21-